UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE RAFFORD,

    Plaintiff,

    v.

SNOHOMISH COUNTY, *et al.*,

    Defendants.

Case No. C07-0947RSL

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. #14) filed by defendants Snohomish County and Snohomish County Superior Court Judge Richard Thorpe (collectively, "defendants"). Plaintiff, who is hearing impaired, alleges that defendants failed to provide him with appropriate auxiliary aids during the trial of his adult son. For the reasons set forth below, the Court grants in part and denies in part defendants' motion.[1]

## II. DISCUSSION

**A.  Background Facts.**

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, defendants' request for oral argument is denied.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 1

In June 2004, plaintiff requested that defendants provide him with real-time captioning ("RTC") during his adult son's upcoming civil commitment trial as a sexually violent predator. Real-time captioning is a shorthand term for the live viewing of a written transcription of proceedings as the transcript is created. Instead, Judge Thorpe and the county court administrators provided plaintiff with an Assisted Listening Device ("ALD"). An ALD is an electronic piece of equipment that processes sounds through microphones placed throughout the courtroom and transmits them to a person with a hearing difficulty, who wears a special receiver to process the sound. Judge Thorpe decided to provide the ALD rather than RTC in part because he believed it would function effectively and be less confusing than RTC. Plaintiff was only a spectator to the trial; he did not participate as a witness or otherwise.

In September 2004, after the conclusion of the four-day trial, plaintiff filed a complaint with the county alleging that he was denied the aid that he requested and denied participation in a government service. In this lawsuit, plaintiff asserts claims under the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Section 504"), *as amended*, 29 U.S.C. § 794, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("WLAD"). Plaintiff seeks monetary damages, an injunction, and a declaration "that Defendants have unlawfully discriminated against Plaintiff by refusing to provide real time captioning for his son's trial." Complaint at p. 6.

**B.    Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 2

**C.     Analysis.**

   **1.     Claims Against Judge Thorpe.**

"It is well settled that judges are generally immune from suit for money damages." Duvall v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001).  In this case, it is undisputed that Judge Thorpe was acting in a judicial capacity when he performed the acts at issue here. Plaintiff concedes that Judge Thorpe is immune from suit for money damages.

Judicial immunity does not bar plaintiff's claims for injunctive or declaratory relief against Judge Thorpe in his official capacity.  See, e.g., Pulliam v. Allen, 466 U.S. 522 (1984); Partington v. Gedan, 961 F.2d 852 (9th Cir. 1992).  However, defendants argue, and the Court agrees, that plaintiff's claim for declaratory relief against Judge Thorpe should be dismissed for another reason.  Judge Thorpe is being sued only in his official capacity as a county official, so plaintiff's claim against him duplicates his claim against the county.  See, e.g., Badillo Santiago v. Garcia, 70 F. Supp.2d 84, 89 (D.P.R. 1999) (dismissing plaintiff's ADA claims against a judge and explaining, "Furthermore, any government entity that [the judge] may be construed as representing in his official capacity, be it the Judicial Branch or the Office of Courts Administration, is already being sued through its respective heads; any further claims against those public entities would be redundant and duplicative").  Plaintiff's claim for declaratory relief against Judge Thorpe is dismissed.

   **2.     Injunctive Relief.**

Plaintiff seeks an injunction to "[p]ermanently enjoin Defendants from denying Plaintiff real time captioning in court proceedings."  Complaint at p. 7.  However, the law requires the provision of a reasonable accommodation; it does not require that defendants provide plaintiff with RTC in all circumstances even if equally effective accommodations are available or become available later.  In addition, injunctive relief is not available because the trial is over, the violation is unlikely to reoccur, and plaintiff has not alleged that he plans to attend any other proceedings in the county.  See, e.g., Ashelman v. Pope, 793 F.2d 1072, 1074 (1986) (explaining

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 3

that injunctive relief against the judge was unavailable because the trial had concluded); Sholtz v. Cates, 256 F.3d 1077, 1082 (11th Cir. 2001) (denying injunctive relief where plaintiffs failed to allege a real and immediate threat of future discrimination where they did not state that they intended to return to the allegedly inaccessible courthouse).  Accordingly, plaintiff is not entitled to injunctive relief.

### 3. Reasonable Accommodation and Intentional Discrimination.

#### (a) Applicable Standards.

Title II of the ADA provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  Duvall, 260 F.3d at 1135.

A plaintiff bringing suit under §504 must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.  Id. Similarly, the elements of a prima facie claim of discrimination in a place of public accommodation under the WLAD are: (1) the plaintiff is disabled; (2) defendant's establishment is a place of public accommodation; (3) disabled persons are not provided services comparable to those provided nondisabled persons by or at the place of public accommodation; and (4) the disability was a substantial factor causing the discrimination.  Id.  Because the elements of plaintiff's ADA, Rehabilitation Act, and WLAD claims do not differ in any respect relevant to the resolution of this motion, the Court addresses the claims together.  Id. at 1135-36.  When a plaintiff brings suit directly under the ADA and Section 504, the public entity is vicariously

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 4

liable for the acts of its employees. Id. at 1141.

The primary issue in this motion is whether provision of the ALD was a reasonable accommodation.[2] There appears to be no published caselaw that addresses a court's obligation to provide auxiliary aids to accommodate a hearing-impaired *spectator*. Instead, the caselaw addresses accommodations for *participants* in the trial process, including litigants and jurors. See, e.g., Memmer v. Marin County Courts, 169 F.3d 630 (9th Cir. 1999). The regulations implementing Title II of the ADA provide: "A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). In this case, plaintiff alleges, and defendants do not contest, that attending a trial as a spectator is a "service, program, or activity" to which the regulation applies. "A trial undoubtedly is a service, program, or activity within the meaning of § 12132." Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001) (denying injunctive relief but finding that mobility impaired plaintiffs/spectators stated a claim under the ADA because they allegedly were denied physical access to a courthouse).

### (b) Duty to Give Primary Consideration and to Investigate.

In determining what type of auxiliary aid is necessary, a public entity must "give primary consideration" to the accommodation requested by the disabled individual." 28 C.F.R. § 35.160(b)(2). After receiving a request for an accommodation, "the ADA imposes an obligation to investigate whether a requested accommodation is reasonable" rather than merely speculating about what is reasonable. Duvall, 260 F.3d at 1136. Judge Thorpe declined to provide RTC because of the potential that plaintiff would audibly object during the proceedings and disrupt

---

[2] Plaintiff's memorandum states that defendants were required to accommodate him so he "could understand" the trial. Response at pp. 1, 10. Plaintiff does not allege that he had a cognitive impairment. Although defendants were required to accommodate his hearing impairment, they were not required to ensure that plaintiff could "understand" the trial.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 5

the trial, and because he believed that RTC could be confusing.[3]  However, he did not discuss those concerns with plaintiff to determine whether plaintiff would audibly object or whether he had experience with RTC.  Under these circumstances, a jury could find that his assumptions violated the ADA's obligation to investigate as explained in Duvall.

### (c) Duty to Provide an Equal Opportunity.

Defendants also contend that the ALD allowed plaintiff access to the trial that was equal to the access provided to other spectators, none of whom could hear the proceedings perfectly at all times.  Certainly, no spectator is guaranteed unvarying perfect sound quality or to be able to hear every spoken word.  However, plaintiff alleges that he was denied "an equal opportunity to participate in, and enjoy the benefits of" the activity.  28 C.F.R. § 35.160(b)(1).  Although defendants argue that plaintiff's sound quality was disrupted because he occasionally heard static and buzzing, plaintiff contends that he could not hear entire portions of the proceedings.  Declaration of Bruce Rafford, (Dkt. #25) at pp. 7-9 (explaining that he was unable to hear testimony of witnesses); id. at p. 8 (explaining that he was unable to hear the prosecutor's questions or his son's videotaped deposition); Declaration of Marilyn Finsen, (Dkt. #16) ("Finsen Decl."), Ex. A (stating that on the third day of trial, plaintiff complained of static so loud that he could not hear).  For purposes of this motion, plaintiff's version of the facts must be accepted.

Defendants argue that the list of potentially effective listening devices in the regulations includes ALDs.  28 C.F.R. § 35.104(1).  The regulation, however, does not mean that the provision of an ALD is reasonable as a matter of law, particularly where, as here, it was occasionally ineffective.

In addition, although plaintiff repeatedly complained to court staff about his difficulties with the ALD, it does not appear that they reconsidered the use of RTC or another accommodation.

---

[3] Defendants do not argue that RTC was unavailable or that it would be too expensive or burdensome to provide it.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 6

Each time plaintiff complained, Judge Thorpe and/or his staff attempted to remedy the situation, but plaintiff alleges that he continued to be unable to hear significant portions of the proceedings. There is no evidence that other spectators, if there were any, were similarly disadvantaged. Therefore, an issue of fact remains regarding whether the ALD provided was a reasonable accommodation and whether plaintiff was able to participate equally in the proceedings. In so finding, the Court does not suggest that courts must provide RTC to spectators.[4] Rather, plaintiff was entitled to an effective accommodation, and viewing the facts in the light most favorable to him, he did not receive one.[5]

### (d) Monetary Damages.

To recover monetary damages under the ADA or Section 504, plaintiff must prove intentional discrimination by defendants, which requires a showing of deliberate indifference. Duvall, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140. In this case, county staff had used ALDs recently in the courtroom for jurors and litigants with success. Declaration of Mark Knudsen, (Dkt. #15) ("Knudsen Decl.") at ¶ 4; Finsen Decl. at ¶ 6. Defendants met with plaintiff prior to the start of the trial to discuss accommodations, including ALDs and RTC. Knudsen Decl. at ¶ 4. When plaintiff complained of problems with the ALD, including static or an inability to hear trial participants who were speaking softly, Judge Thorpe instructed others to speak up and his staff

---

[4] Besides RTC and a properly functioning ALD, other accommodations may have been reasonable, such as providing plaintiff with daily transcripts of the proceedings.

[5] There is a certain degree of irony in a federal court, which is covered by neither the ADA nor the Rehabilitation Act nor subject to the WLAD dictating what a state court should have done under novel and challenging circumstances. This Court might have done exactly what Judge Thorpe did. Nevertheless, with the benefit of 20:20 hindsight and applying a deferential standard of review under summary judgment principles, plaintiff might be able to show he should have been provided with RTC in this case.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 7

worked to remedy the problems. They relocated the equipment, changed the ALD receiver's batteries, changed out an infrared ALD with an FM ALD, and had a county electrician assess whether there was any electrical device that might be causing interference. In addition, the county provided plaintiff with the same accommodation he had requested during his son's previous trial in 1992. In sum, there is no evidence of intentional discrimination or discriminatory animus. Plaintiff's claims for monetary damages under the ADA and Section 504 must be dismissed.

### 3. WLAD Claim.

Unlike Section 504 and Title II of the ADA, the WLAD does not require a showing of intentional discrimination in a suit for money damages. RCW 49.60.030(2). The statute, however, requires compliance with its complaint filing procedures. RCW 4.96.020 and Snohomish County Code § 2.90.050 require that plaintiff file his claim with the Clerk of the Snohomish County Council sixty days prior to filing his lawsuit. It is undisputed that plaintiff did not comply with those procedures. Instead, he filed his claim with the County Department of Finance (Risk Management). Plaintiff cannot refile his claim with the correct entity because the statute of limitations has now run. Failure to comply with the statute does not bar his claims for injunctive and declaratory relief under the WLAD. The parties dispute whether that failure bars his WLAD claim for monetary relief.

Under state law, "strict compliance" with claims filing procedures is required. Sievers v. City of Mountlake Terrace, 97 Wn. App. 181, 183 (1999); see also Reyes v. City of Renton, 121 Wn. App. 498, 502 (2004) (failure to strictly comply with filing procedures leads to dismissal); Hardesty v. Stenchever, 82 Wn. App. 253 (1966). Nevertheless, plaintiff argues that his claim should survive for two reasons. First, he argues that some unnamed county official told him to file his claim with Risk Management, so the county should be estopped from arguing that he failed to follow the claims procedures. However, the statute states clear filing requirements, so equitable estoppel will not lie. See King v. Snohomish County, 105 Wn. App. 857, 864 (2001)

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 8

(explaining, in a factually similar case, that "[e]quitable estoppel cannot lie" where a statute clearly states "a clear procedural filing requirement").  Second, plaintiff notes that in June 2007, the claims filing statute was revised to state that claims must be filed with the Department of Finance in the Risk Management Office.  Plaintiff contends that the change should apply retroactively.  Plaintiff's claim is untenable because claims filing statutes "are mandatory and compliance with them is a condition precedent to recovery."  O'Donoghue v. Washington, 66 Wn.2d 787, 788 (1965) (refusing to apply a limitations statute retroactively).  There is no evidence that the legislature intended for the change to be retroactive.  Furthermore, plaintiff has not cited any cases in which a change in a claims filing statute was applied retroactively.  In fact, applying the statute retroactively would have the paradoxical effect of rendering ineffective the notice given by many other claimants who correctly filed their claim with the Clerk of the Snohomish County Council prior to the statutory change.  The county is not arguing in those cases, nor could it, that the change is retroactive and that it defeats those claims.  Nor can plaintiff argue that the change is selectively retroactive only as to his claim.  In sum, plaintiff's failure to follow the claims filing procedure set forth in the statute precludes him from pursuing a claim for monetary damages under the WLAD.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment (Dkt. #14).  Plaintiff's claims against Judge Thorpe are dismissed.  Plaintiff's claims against Snohomish County for injunctive relief and for monetary damages are also dismissed.

At this point, only plaintiff's claim against Snohomish County for declaratory relief remains.  Accordingly, the parties are urged to attempt to resolve this matter without a trial, using a

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 9

mediator if necessary.

DATED this 5th day of February, 2008.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 10